## EMBEZZLEMENT BY A CORPORATION.

Common Pleas Court of Hamilton County.

STATE OF OHIO V. CHARLOTTA THOMPSON BROWN.

Decided, October,. 1913.

*Criminal Law—Conversion of Securities by a Corporation Held to be the Act of Its Controlling Officer.*

Where one acting as president and treasurer of a corporation engaged in the brokerage business and shown by the evidence to have been the controlling factor of said corporation, sells the stock of a customer and converts the proceeds to his individual use or the use of the corporation, he will be held to have acted as the agent of said customer, and the intent involved in the wrongful conversion will be regarded as his intent, and an indictment for embezzlement lies against him rather than against the corporation.

*Thomas L. Pogue,* Prosecuting Attorney, and *Walter M. Locke,* Assistant Prosecuting Attorney, for the state.

*Cogan, Williams & Ragland,* contra.

CUSHING, J.

At the conclusion of the testimony for the state the defendant, by her counsel, filed a motion praying the court to instruct the jury to return a verdict of not guilty in this case. The motion is as follows:

1. Sufficient evidence has not been introduced by the state to establish beyond a reasonable doubt the material allegations made and set forth in the indictment.

2. There is no testimony to show that the defendant converted to her own use any of the money of the prosecuting witness, Fred Schroth.

3. The testimony introduced does not disclose any agency or contractual relationship between the prosecuting witness, Fred Schroth, and the defendant.

4. Because the testimony discloses that the transaction was only between Fred Schroth and the Thompson Brown Company, a corporation.

I shall consider but two grounds of the motion, viz., the third and fourth, as follows:

3. The testimony introduced does not disclose any agency or contractual relationship between the prosecuting witness, Fred Schroth, and the defendant.

4. Because the testimony discloses that the transaction was only between Fred Schroth and the Thompson Brown Company, a corporation.

For the purpose of this motion, the admitted facts are that the Thompson Brown Company is a corporation; that Charlotta Thompson Brown, the defendant, was at the time in question the president and treasurer of said corporation; that Henry A. Brown, her husband, was vice-president and general manager of said corporation; that prior to March 31, 1913, Henry A. Brown called on Fred Schroth at his place of business in the west end for the purpose of selling him stocks and securities; that on March 31, 1913, Henry A. Brown called Fred Schroth on the telephone and inquired if he, Schroth, knew that J. P. Morgan of New York City had died. Schroth replied in the negative. Brown then stated that in his opinion the death of Mr. Morgan would cause a depreciation in the value of what is known as "steel" stock; that as Schroth owned some 200 shares of said stock, he, Brown, would advise him to sell. Schroth inquired of Brown the price that could be had and Brown answered, 107⅛. Schroth stated that he did not know who to get to sell it, and Brown answered that he would sell the stock for him. Schroth then advised Brown that he would send the stock to him. He gave it to his son, Elmer Schroth, who immediately started to deliver the stock. Elmer took the two hundred shares of said stock to the office of the Thompson Brown Company. On arriving at the office Henry A. Brown and this defendant were there. This defendant took the stock, left the room in which Elmer Schroth was, went into another department of the office and returned and gave the receipt for the steel stock from Fred Schroth and signed by the Thompson Brown Company, by C. T. Brown, president. Elmer Schroth, acting for his father, accepted the receipt and delivered the stock and filed the receipt with his father's papers at their office.

The further admitted facts are that after Henry A. Brown called Fred Schroth on the telephone as above detailed and before the stock arrived at the office of the Thompson Brown Company, Charlotta Thompson Brown, this defendant and president of the company, went to a branch office of C. I. Hudson & Company in this city and arranged for the sale of the stock at the price agreed upon, 107⅛. Shortly after the receipt of the stock, this defendant drew a draft on C. I. Hudson & Company in New York and attached the stock to it, took the same to the Fourth National Bank of this city and arranged with that bank to collect the draft. At that time she secured an advance on the draft, in the sum of fifteen thousand dollars. This advance was made in the form of a cashier's check. The cashier's check was to the order of the Thompson Brown Company, and by this defendant was deposited in the Fifth-Third National Bank of this city to the credit of the Thompson Brown Company; that the draft went forward to C. I. Hudson & Company in New York and by them was paid on or before the fourth day of April, 1913. The Fourth National Bank had sent the draft to its correspondent, the First National Bank of New York. On April 4th, 1913, the First National Bank of New York City wired the Fourth National Bank of this city that the C. I. Hudson & Company draft had been paid, and the sum of $22,007.77 was credited to the account of the Fourth National Bank of this city. The latter bank immediately notified the Thompson Brown Company through this defendant, when she called at the banking house of said bank, received a cashier's check for $7,007.77 and deposited the same in the Fifth-Third National Bank as she had done with the fifteen thousand dollars.

Further, on March 31, 1913, this defendant, through Thompson Brown Company began paying out the money so deposited on the obligations of the Thompson Brown Company and her own, and continued from time to time to pay out said money until April 25, 1913, when the last of the money was paid out to creditors of either the Thompson Brown Company or her own, none of it, however, going to Fred Schroth.

After the delivery of the stock as before stated, Fred Schroth on April 4th called this defendant on the telephone and inquired

as to whether or not the money had been received for the stock, she replied that it had not, that the mails were delayed and they "would have to wait on such things."

On April 14th, Mr. Schroth, his son Elmer and Judge O'Hara went to the office of the Thompson Brown Company to inquire as to whether or not the money had been received. They received a reply that it had not been received.

On April 16th, the Thompson Brown Company sent to Fred Schroth a check for $22,007.77. Immediately after the check was sent, Mrs. Brown, the defendant, went to the office of Judge O'Hara, attorney for Fred Schroth, and stated to him that she had received a draft from New York for the proceeds of the sale of the stock in question; that the draft was not properly endorsed, and that she had instructed her book-keeper to wire to New York for authority to the bank here to endorse the check; that the book-keeper did not obey her instruction, but returned the draft to New York for proper indorsement, and the matter would be delayed and asked Judge O'Hara to have his client, Fred Schroth, hold the check as she did not have enough money in the bank to meet it, and if it were presented it would be embarrassing to her. A day or two after this, Judge O'Hara went with the Schroths to the Fourth National Bank, and there learned that the money had been paid and deposited in the Fifth-Third National Bank. The check was then endorsed to the Fourth National Bank by Fred Schroth, and Mr. Williams, vice-president of the Fourth National Bank presented it to the Fifth-Third Bank for payment, which was refused on account of not having funds.

The motion above stated squarely raises the question as to whether or not the defendant was the agent of Schroth and if she was not, whether the Thompson Brown Company was his agent, and if the Thompson Brown Company was the agent, whether she can be held to answer to this indictment for embezzling the funds of Fred Schroth.

An agent is defined to be one who acts for another by authority from him; and the one who undertakes to transact some business or manage some affair for another by authority, and on account of the latter and to render an account of it.

There is a difference between an agent and a broker. The agent acts exclusively for some person, while a broker holds himself out generally for employment in matters of trade, .commerce and navigation.

The admitted facts in this case are that the Thompson Brown Company, of which Mrs. Brown was the president and treasurer, were in the brokerage business. The receipt for the stock in question was given by the Thompson Brown Company signed by Mrs. Brown and accepted by Fred Schroth as his agent. It seems clear that the Thompson Brown Company undertook to act as a broker for Fred Schroth in the sale of the stock in question.

Counsel for the defendant contends that Mrs. Brown was not the agent in any sense of the word for Fred Schroth. I can not say from the evidence that she personally was specifically authorized to act individually for Fred Schroth. She was the head of the corporation. The corporation undertook to act for him. The business• was procured by an officer of the corporation. The money was received by Mrs. Brown and by her deposited in the bank to the credit of the corporation, which, at the time of the deposits was insolvent in more than the sum of $69,000. Either Mrs. Brown or the corporation or both agreed to undertake to act as agent for Fred Schroth in the sale of this stock. Both Mrs. Brown and the corporation discharged that part of their engagement which related to the sale of the stock and the collection of the money. Whether the corporation pocketed the money or whether Mrs. Brown, acting through the corporation pocketed the money, the fact remains that it was appropriated to a use other than that of the discharge of the obligations to Fred Schroth. Now Mrs. Brown comes in and asserts that there is no valid law to punish her for embezzlement. bezzlement.

In the case of *State of Ohio* v. *Bennet Carter*, 67th Ohio State, 438, Judge Price, delivering the opinion of the court, uses this language:

"Carter discharged that part of his engagement which relates to the collection of the money and after pocketing the same he asserts that there is no valid law to punish him for embezzlement. Such a defense is brazen, if nothing more."

It is true, a corporation has a legal entity in Ohio.  This is apart from the individuals composing it.  It is an inanimate being which, left to itself, can do nothing.  If a human being or collection of human beings did not cause it to act, it would lie dormant forever.  It can neither state a fact nor mis-state the truth.  It can not collect money.  It is not like the law that is without ''name or color or hands or feet; that hears without ears, sees without eyes; moves without feet and seizes without hands.''  It is what is known as a fiction of law, but when the question of intent is interposed, the law will look beyond the mere fiction of law and assign the intent to the persons that caused the corporation to act.

In the case of *State, ex rel,* v. *Standard Oil Company,* 49th Ohio State, 137, the Supreme Court says:

''That a corporation is a legal entity, apart from the actual persons who composed it, is a mere fiction introduced for convenience in the transaction of its business, and of those who do business with it; but like every other fiction of law, when urged to an intent and purpose not within its reason and policy, may be disregarded.''

In the case of *State of Ohio* v. *Pohlmyer,* 59 Ohio State, 491, Pohlmyer was indicted by the grand jury of Hamilton county for embezzling $287 from the W. L. Douglas Shoe Company.  Pohlmyer made the defense that the Douglas Shoe Company was not authorized under the laws of Ohio to do business in the state of Ohio, and therefore he could not be held for embezzling funds of that company.  The Supreme Court in determining the question thus presented uses this language:

''They do not disclose a purpose on the part of the General Assembly to make booty of the property of a corporation which does not comply with the provisions of the act.  Under the statute defining embezzlement the offense consists in converting to one's own use 'anything of value which comes into his possession by virtue of his employment as agent, servant or employe.'  The statutory definition of the offense regards the actual relation of the agent, servant or employe, and not the legality of the mode in which it was created nor the extent of the authority conferred.  And the rule that one who receives money or any other thing of value in the assumed exercise of

authority as agent for another, is estopped thereafter to deny such authority, applies in criminal prosecutions as well as in civil actions.''

I would not carry the doctrine to an estoppel as far as the Supreme Court has in this case. Indeed, it is not necessary to pass upon that question here, but the particular language of the Supreme Court to which I refer in that case is:

''Under the statute defining embezzlement the offense consists in converting to one's own use 'anything of value which comes into his possession by virtue of his employment as agent, servant or employe.' * * * And the rule that one who receives money or anything of value in the assumed exercise of authority as agent for another.''

In this case, both Mrs. Brown and the Thompson Brown Company assumed to exercise authority as agent for Fred Schroth.

Either Mrs. Brown or the corporation acting at her instance received this money and converted it to the use of the corporation or to her individual use. It is my opinion that they are liable as agents of Fred Schroth.

The only remaining question then is whether or not it was the act of the corporation or the act of Mrs. Brown and whether Mrs. Brown can be held in a criminal prosecution for having converted the money of Fred Schroth to her own use.

As I have pointed out, a corporation can not and does not act except at the instance of the individuals controlling it. It was necessary to discuss the law on the question of corporation in discussing the question of agency. I desire, however, to add that the Supreme Court of the State of Wisconsin, in the case of *Milbrath* v. *State*, 138 Wisconsin, 354, was a case where a corporation had received $300 from an individual. The money was loaned on a mortgage. The mortgage was afterwards collected by the corporation and the money turned into the treasury of the corporation. The corporation at that time was insolvent and the money was used by the corporation through its president to pay the debts of the corporation and the debts of individual members of the corporation. Milbrath was indicted for embezzlement and made the defense that it was the act

of the corporation, and not his individual act; therefore he could not be held to answer the charge of embezzlement. The language of the court in that case is significant:

"A corporation exists only in contemplation of law, and the legal fiction that it is a separate entity, though necessary for many purposes, can not be urged to an intent and purpose not within the reason and policy of that fiction.

"A person charged with crime will not be heard to say in justification that he has committed the act in his official capacity as officer of the corporation; nor to assert that acts in form, corporate acts, were not his acts merely because they were done by him through the instrumentality of a corporation which he controlled and dominated in all respects and which he employed for that purpose."

In the opinion the court uses the following language:

"It will readily be seen that all these errors are assigned on the theory that this corporation intervened between the principal and the lone agent after the relation of principal and agent had been created as an independent responsible personality, which by reason of its intervention to some extent changed the relation therefore existing between the defendant and the Mizer estate, and itself received and converted the three hundred dollars in question.

"No doubt a corporation is for many purposes a juristic person. Corporations have a right to hold and enjoy property, to contract and be contracted with, to sue and to be sued, may in all such matters as an authentical person assert the rights of property, contract, duty or obligation such as actual persons must assert, but we must not forget that a corporation exists only in contemplation of the law. * * *

"The corporation is in such case a mere instrumentality through and by means of which the natural persons in control thereof carried out in their acts."

The conclusion is that Mrs. Brown was the controlling factor in the Thompson Brown corporation; that whatever intent is to be drawn from the evidence was her intent; and that she, and not the corporation, is liable in a criminal prosecution.